ARIANNA R. YOE, widow of BENJAMIN R. YOE *vs.*
THE BENJAMIN C. HOWARD MASONIC MUTUAL
BENEVOLENT ASSOCIATION OF BALTIMORE CITY.

*Mutual Benevolent Association—Death Assessment—For-*
*feiture of Membership—Notice—Sickness as an Excuse*
*for Default—Waiver.*

Y. was a member of a Mutual Benevolent Association, whose object
was to provide and maintain a fund for the benefit of the widows
and orphans of deceased members. By one of its articles it was
provided that upon the death of a member of the association, the
secretary should notify each member, and thereupon each member
should "*within* thirty days *from the date of said notice* pay to the sec-
retary the sum of one dollar and ten cents, and in case he neglect or
refuse to pay the same, his name shall be erased from the roll of
members, and *he shall forfeit all claims upon the* association; never-
theless any member may be *reinstated* by giving such excuse himself
or through his representative, for failing to pay his assessment as
may be satisfactory to the Board of Directors." It was further
provided that " a notice directed and sent to the post office address
or to the residence of a member as recorded in the books of the
secretary, shall be deemed a legal notice." On the 29th of August,
1882, a notice of that date of assessments for and in respect of the
death of two members, was directed and sent to the post office
address of Y. requiring him to pay said assessments *within* thirty
days from the date of such notice. No payment or tender of the
assessments was ever made, and Y. died two days after the expira-
tion of the thirty days from the date of the notice. He was taken
sick on the 13th of September, 1882, and was for most of the time
between that date and the time of his death, in a state of delirium,
and entirely incapable of attending to business. In an action
against the association, brought by the widow of Y., it was HELD :

1st. That the obligation to pay the death assessment was personal to
the member, and the payment was to be made by him as such, and
in case of his default he ceased to be a member, and forfeited all
claim upon the association.

2nd. That the notice directed to Y. having been duly mailed on the
day of its date, there was no necessity for proving its actual receipt
by him.

3rd. That the full thirty days having expired without payment, and the party having died two days thereafter, he was not a member at the time when he died, having by his default lost his membership and all the benefits appertaining thereto.

4th. That the fact that he was part of the time sick and wholly unable to attend to business, constituted no sufficient legal excuse for the default whereby this consequence was produced.

5th. That there was nothing in the case that could be fairly construed to operate as a waiver on the part of the association, of its right to insist upon the forfeiture under said article.

APPEAL from the Baltimore City Court.

This was an action brought by the appellant to recover from the appellee, a sum claimed by her as the widow of Benjamin R. Yoe, deceased. The deceased had been a member of the defendant association; and by one of its articles, a sum based upon the number of members, was payable on the death of each member to his widow, child or children, &c. The sum to which the plaintiff claims to be entitled under this article is the subject of this action. The case is further stated in the opinion of the Court.

*Exception.*—At the trial, the plaintiff offered the three following prayers:

1. If the jury shall believe from the evidence, that Benjamin R. Yoe was, during his life-time, a Master Mason in good standing, and was a member of the defendant, which issued to him the certificate of membership offered in evidence in this case, and that the said Yoe paid to said defendant all the assessments made by said defendant for deaths of its members, prior to August 29th, 1882, and that on or about the said 29th day of August, 1882, a notice was sent by the secretary of the defendant to the said Yoe, notifying him of the death of Jesse Remington and F. B. Carlin, two of the members of said defendant, and that he was assessed $2.20, to be paid within thirty days from the date of said notice, and that failure to pay

the same would forfeit his membership; and shall also find, that after the receipt of said notice, the said Yoe was, within the thirty days allowed by said notice for payment of said assessment, taken sick, and continued very ill, and was delirious the most of the time during such illness, and was, during such time, incapable of attending to business of any kind, then the benefits of said defendant were not forfeited, and the plaintiff is entitled to recover in this case, if the jury believe she is the widow of said Yoe, although the jury find that the assessments referred to in said notices were not paid.

2. If the jury shall believe from the evidence in this case, that the defendant in this case has always been in the habit of collecting from the said Yoe assessments, after the time at which they fell due, and did also, after the expiration of the time of the first notice offered in evidence in the case, send a second notice, demanding payment of the same assessments, and that said second notice was sent for the purpose of allowing the said Yoe, to pay the assessments, so set forth in the first notice, then the jury may infer that the defendant, by such course of dealing with a member, waived its right to forfeit the benefits due to his widow at his death, and the plaintiff is entitled to recover in the case, although the jury find that such assessments were not paid within the time required by the notice.

3. If the jury find for the plaintiff, they may assess such damages as will amount to one dollar for each member of the association at the death of the said Benjamin R. Yoe, with interest, in the discretion of the jury.

And the defendant offered the three prayers following:

1. If the jury shall find from the evidence, that the printed postal card notice, dated August 29th, 1882, offered in evidence by the defendant, was on the day of its date, deposited by the secretary of the defendant in the Baltimore post office, and that the address of said postal card was the true address of the place of business of said

Benjamin R. Yoe at that time, then the facts aforesaid are sufficient evidence of the delivery of said notice at said address, and there is no evidence that said Benjamin R. Yoe, or any person in his behalf, paid, or tendered payment, of the assessments mentioned in said notice, within the time limited by Article VIII of the constitution of the association, and no evidence that he was reinstated a member of said association after that time, and the verdict must be for the defendant.

2. That under the agreement of counsel read in evidence in this case, the number of the members of the association at the time of the death of Benj. R. Yoe (not counting him) was six hundred and forty-nine.

3. That the Court exclude the evidence which was taken subject to exception.

The Court (BROWN, C. J.,) granted the defendant's first and third prayers, and rejected its second prayer, and the prayers of the plaintiff. The plaintiff excepted, and the verdict and judgment being against her, she appealed.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, and BRYAN, J.

*Samuel Snowden,* for the appellant.

*John S. Tyson,* for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

The appellee in this case is a mutual benevolent association, and its object is to provide and maintain a fund for the benefit of the widows and orphans of deceased members. Its nature is very much that of a mutual insurance society. It is a corporation, and the rights and duties of the members are defined and determined by certain articles of association and by-laws. Each party applying to become a member, upon showing that he has a proper

Yoe *vs.* The Benjamin C. Howard Mutual Benevolent Association.

·standing in the Masonic order, is of good health, and within the prescribed age, is required to pay a certain ·entrance fee, and he obtains a certificate of membership, which entitles him to all the benefits of the association upon his paying one dollar and ten cents, within thirty days ·after receiving notice of the death of any member thereof. By article 6, it is provided that upon the death of a member the president shall draw his order on the trea- ·surer, within sixty days after he shall have received the proper notice thereof, for a sum equal to one dollar for ·every member of the association at the date of the death, ·and the treasurer shall forthwith pay the sum so called for, to the widow, child, or children, &c., of the deceased. And article 8, provides as follows:

"Section 1. Upon the death of a member of the asso- ·ciation, it shall be the duty of the Secretary to notify each member of the fact of death, and thereupon each member shall *within* thirty days *from the date of said notice,* pay to the secretary the sum of one dollar and ten cents, and in case *he* neglect or refuse to pay the same, his name shall be erased from the roll of members, and *he shall forfeit all claims upon the association;* nevertheless, any member may be *reinstated* by giving such excuse himself or through his representative, for failing to pay his assess- ment, as may be satisfactory to the Board of Directors.

"Sec. 2. A notice directed and sent to the post office ·address or to the residence of a member, as recorded in the books of the secretary, shall be deemed a legal notice."

These articles of association are binding upon each mem- ber of the body, and they define the rights and duties of ·all concerned. Those who claim benefits of the associa- tion must, therefore, claim in accordance with these rules ·and regulations, and not otherwise.

In this case the action is brought by the widow of Benja- min R. Yoe, who had been a member of the association ·for many years, and who lived and died in the City of

Baltimore. He died on the 30th of September, 1882; and before his death and while he was a member of the association, that is to say, on the 29th of August, 1882, a notice of that date of assessments, for and in respect of the death of two members, was duly directed and placed in the post office at Baltimore, requiring Yoe to pay such assessments within thirty days from the date of such notice. There is evidence that this notice was in point of fact received, though at what particular time does not appear; and there was also a second notice sent, of the same import of the first, but there is no evidence that it was ever seen by Yoe. No payment or tender of the assessments was ever made, and Yoe died two days after the expiration of the thirty days from the date of the notice.

The right of recovery is denied, and the ground of defence is, that the deceased had, prior to his death, forfeited his membership and all the rights thereto belonging, by the non-payment of the assessments *within* the thirty days after the date of the notice duly mailed to his address. While on the part of the plaintiff it is insisted, that there is a legal excuse for the non-payment of the assessments, found in the fact that Yoe was taken sick on the 13th of September, 1882, and was, for most of the time between that date and the time of his death, in a state of delirium, and entirely incapable of attending to business.

These associations are of a beneficial character, and have for their general purpose mutual aid and protection for the families of deceased members. The only guarantee of the relief promised consists in the right and power of the association to make assessments, and the obligation of the surviving members to pay such assessments punctually and without default. The certificate of membership is analogous to the ordinary policy issued by a mutual life insurance company; and the Courts have, as Mr. May says, " with great uniformity treated these associations as substantially life insurance companies, applying to them, and

to the virtual relatives of the members the rules and prin-
ciples applicable to the contract of life insurance." *May
on Ins.*, sec. 550*a*, and the cases there cited. Indeed,
without the same strictness and punctuality observed by
insurance companies such associations could not subsist.
If the obligations of members were not insisted on with
strictness, the whole object of the association would be
liable at any time to be frustrated; for if one member could
be indulged beyond the limits prescribed by the articles
of association, each and every one of them could claim
similar indulgence; and the consequence might be an en-
tire disappointment in the benefits to be received. To
obviate such possible consequences, and to effectuate the
objects of the association, the obligations of members are
required to be enforced with strictness. The obligation
to pay the death assessment is personal to the member,
and it must, according to the terms of the article referred
to, be paid in his life-time, for if he dies before payment,
no representative of his is authorised to pay for him, in
order to entitle the intended beneficiary to receive the
mortuary aid from the association. The payment is to be
made by the member as such, and in case of his default
he ceases to be a member, and he forfeits all claim upon
the association. The member failing in his life-time to
make payment, and the thirty days having expired before
his death, and no one being authorised to make it after
his death, to hold the association liable, notwithstanding
no payment of the assessment has been made, would be
to disregard the mutuality of obligation of members, as
well as do violence to the terms and plain intent of the
article of the association which we have quoted.

There is no question of the fact that the notice, dated
the 29th of August, 1882, and directed to Yoe, was duly
mailed on that day, and the rational as well as the legal
presumption is, that it was duly received. The fact of
such notice having been sent is fully proved by the secre-

tary of the association; and, by section 2, of Article 8, already recited, it is expressly declared, "that notice so sent shall be deemed legal notice." It is not necessary, therefore, for the association to do more than to show that such notice was directed and sent to the post office address of the member; it being agreed by the members that that shall be sufficient notice. The thirty days grace commenced to run from the date of this notice; and before the deceased was taken sick he had some fourteen or fifteen days within which he could have made payment. The thirty days grace was for his convenience and accommodation; and though he had the full period of thirty days within . which he could make the payment, yet if he thought proper to defer payment to the last hour of that period, the delay was at his own risk, and not that of the association. Here the full thirty days had expired without payment, and the party died two days thereafter; and that being the case, he was not a member when he died, having by his default lost his membership and all the benefits appertaining thereto. And the fact that he was part of the time sick and wholly unable to attend to business constitutes no sufficient legal excuse for the default whereby this consequence was produced. There is nothing in the case that can be fairly construed to operate as a waiver on the part of the association of its right to insist upon the forfeiture under the article referred to; and, upon the evidence, the Court below was clearly right in rejecting the prayers of the plaintiff, and in granting the first and third of those offered by the defendant. The case has the appearance of hardship, but that is a matter beyond our control; it may appeal to the benevolence of the association of which the deceased was so long a member.

*Judgment affirmed.*

(Decided 16th January, 1885.)