J. M. CAMARA, ADMINISTRATOR OF THE ESTATE
OF CAROLINE PINHEIRO, DECEASED, *v.* SOCIE-
DADE LUSITANA BENEFICENTE DE HAWAII,
A CORPORATION.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED NOVEMBER 9, 1914.          DECIDED DECEMBER 11, 1914.

ROBERTSON, C.J., WATSON AND QUARLES, JJ.

BENEFICIAL ASSOCIATION—*scope of powers of.*
    An incorporated beneficial association is limited to the purposes
    or object expressed in its charter and when the charter of the
    association prescribes who shall be the beneficiary of a member-
    ship after the death of the member it is not in the power of the
    company or the member or of both to alter the rights of those
    who by the charter are declared to be the beneficiaries except in
    the mode and to the extent therein indicated.
SAME—*by-law—when void.*
    A by-law which is inconsistent with the charter is unauthorized
    and void.
SAME—*same—beneficiary of mortuary fund.*
    Where the charter expressly provides who shall be entitled to
    receive the mortuary fund after the death of a member the corpo-
    ration cannot make a by-law extending or limiting the right thus
    regulated.
SAME—*same.*
    The designation of a person not entitled to take under the
    charter of the society does not invalidate the contract but only
    the designation so that the benefit will go to the person right-
    fully entitled to take under the charter of the society.

OPINION OF THE COURT BY WATSON, J.

This is an action of assumpsit to recover the sum of $1500
as a death benefit or donation alleged to have accrued to plain-
tiff's intestate as the widow of one Eduardo Pinheiro, who was
at the time of his death a member in good standing of defend-
ant, an incorporated mutual benefit society. The material facts
are undisputed and are as follows: The member joined the
society March 8, 1882, and died October 20, 1910; in 1909

(By-Laws, Ch. 7) the amount of the death benefit was set at a fixed sum, viz., $1500, to be taken from a special fund for the establishment of which monthly dues were to be paid by all members. There is no contract of insurance or death benefit certificate and the claim rests entirely upon the charter and by-laws of the society. The purpose of the society, as stated in its charter granted on the 17th day of January, 1887, and also in its amended charter granted on the 20th day of April, 1909, is the *"rendering aid and assistance to each other in case of sickness and to the families of such as might die."* By Article 10 of chapter 7 of the by-laws of 1909 it is provided: "The member who has no family in the Territory of his residence, as designated in the above article, and who does not have himself any means of subsistence, shall have the right to leave, after his death, all the donation or part of it to any person or persons who shall have taken proper care of him or who shall have helped him or who shall have provided for his subsistence or for his treatment during his sickness." Eduardo Pinheiro before his death executed the following instrument duly presented to the defendant:

"To the President and Board of Directors of Sociedade Lusitana Beneficente de Hawaii:

"Whereas Eduardo Pinheiro, a resident of Honolulu, County of Oahu, Territory of Hawaii, is advanced in age, in poor bodily health and unable to perform any manual labor wherewith to pay for his proper maintenance and other necessary expenses, and

"Whereas, the said Eduardo Pinheiro is without any immediate family living within the Territory of Hawaii to care and maintain him, and

"Whereas the said Eduardo Pinheiro is, at the present time, a member in good standing of the Sociedade Lusitana Beneficente de Hawaii, a corporation organized and existing under the laws of the said Territory of Hawaii, and

"Whereas the by-laws of said Sociedade Lusitana Beneficente de Hawaii require the payment of certain dues and assessments from time to time by the said Eduardo Pinheiro in order

to keep and maintain himself in proper standing and in order to be entitled to give and dispose of such donations or benefits as the said by-laws prescribe at his decease, and

"Whereas the said Eduardo Pinheiro is financially unable to pay any further dues or assessments as aforesaid or to properly care for and maintain himself, and

"Whereas Jose Ferreira Durao, residing at City of Honolulu aforesaid, has promised and agreed to pay all such dues and assessments due since January 28th, 1908, or which may hereafter become due and owing by said Eduardo Pinheiro to said Sociedade Lusitana Beneficente de Hawaii under its by-laws, and to provide for and maintain the said Eduardo Pinheiro during the balance of his term of his natural life, and

"Whereas the said Eduardo Pinheiro is desirous of giving and disposing of any and all donations or benefits to the said Jose Ferreira Durao which may be given or disposed of by the by-laws of said Sociedade Lusitana Beneficente de Hawaii;

"Now Therefore, I, the undersigned, Eduardo Pinheiro, member number 233 of the Sociedade Lusitana Beneficente de Hawaii, in conformity with conditions of Article X of Chapter VII of the actual statutes in power, to declare that I am of sound and disposing mind and memory and it is my free wish and desire that the donation, which Article III of Chapter VII refers to, be, after my death, and I do hereby order the officers of the said Sociedade Lusitana Beneficente de Hawaii to pay the said donation in total to my beloved friend, Jose Ferreira Durao of Honolulu, Island of Oahu, Territory of Hawaii, or his heirs, at my decease in recompense for my maintenance and many other expenses done by me and paid by the said Jose Ferreira Durao and for services rendered to me in life.

"Dated at Honolulu, Oahu, September 16, 1909.

                                    "Eduardo Pinheiro     his
                                                           X
"In the presence of :                                    mark.
          "Camillo Pereira
          "F. Pacheco
          "J. P. Rodrigues"

None of the facts stated in this document are controverted. Eduardo Pinheiro resided in Honolulu, his wife at Funchal, in the Madeira Islands. This separation was entirely without

fault of the wife. Joseph Durao is not related to the deceased either by consanguinity or affinity and was not shown to be a member of his household. The defendant claims that under its by-laws and the above instrument it is legally bound to pay the $1500 death benefit to Durao and not to plaintiff. Plaintiff contends that the by-law (Art. 10, supra) is not within the powers of the society to enact and is therefore *ultra vires* and void and that plaintiff's intestate, in the absence of a legal nomination, was the beneficiary under the by-laws of the society. It is conceded by defendant's counsel that if this point be well taken plaintiff is entitled to recover in this action, the widow under the by-laws being the person entitled to recover the death benefit of $1500, in the event there is no other valid disposition thereof by the member.

The only question presented to the trial court was whether under a proper construction of the charter and by-laws of the defendant society Eduardo Pinheiro could designate a stranger (Durao) as beneficiary to the exclusion of the widow (plaintiff's intestate). The evidence is undisputed that Durao cared for the deceased and incurred debts to the extent of $600 for his maintenance. The case was tried in the circuit court, jury waived, and from a decision and judgment in defendant's favor plaintiff brings the case to this court on exceptions.

Certain principles touching the management and control of incorporated benefit societies and the payment of benefits growing out of the death of a member, seem to be well settled by the authorities. Among others the following may be stated:

When the charter of the society prescribes who shall be the beneficiary of a membership after the death of the member it is not in the power of the company or the member or of both to alter the rights of those who by the charter are declared to be the beneficiaries except in the mode and to the extent therein indicated. *Kentucky Ins. Co.* v. *Miller's Administrator,* 13 Bush. 489; *Amer. Legion of Honor* v. *Perry,* 140 Mass. 589; *Presbyterian M. A. Fund* v. *Allen,* 106 Ind. 593; 2 A. & E.

Ency. Law (1st ed.) 177; 1 Bacon, Benefit Societies and Life Insurance, §168; *Old People's Home Society* v. *Wilson,* 176 Ill. 94.

The by-laws must be consistent with charter. 1 Bacon, Ben. Soc., §83; 3 Clark and Marshall on Private Corporations, p. 1941; 3 A. & E. Ency. Law (2d ed.) 1062; 5 A. & E. Ency. Law (2d ed.) 95; and a by-law which is inconsistent therewith is utterly void. *Presbyterian M. A. F.* v. *Allen,* supra; *Hicks* v. *Perry,* 140 Mass. 580; *Cerny* v. *Cesky Dam,* 146 Ill. App. 518.

In the case at bar the purposes for which the society was formed are strictly limited by charter (1st) to rendering aid and assistance to the members in case of sickness, and (2d) to rendering aid and assistance to the families of such as may die. The by-laws of the society from the time of its organization have recognized and made provision for two forms or classes of benefits in accordance with charter provisions,—sick benefits, known as soccoros, and death benefits, known as donativos, and the undisputed evidence shows that for a period of more than one year prior to the death of Eduardo Pinheiro he was in receipt of a sick benefit or invalid pension of $10.50 per month from the society. From this sum was deducted his dues and assessments amounting to $2.50 and sometimes $3 a month, and the balance was paid to the deceased member. Under the by-laws of the society (Art. 15, Ch. 7, By-Laws of 1909) the death benefit is to be paid by the society within ninety days after the receipt by it of official notification of the member's death accompanied by due proofs, etc. The charter of the society contemplates assistance to the member during his life and the payment after the death of the member of a benefit fund to the member of the family entitled thereto under the rules of the society—in this case (in the event the designation of Durao was invalid) concededly the widow. It is admitted that Durao, who claims the fund, is not a member of the family of the deceased. But it is contended by counsel for defendant that as the society was

organized, among other purposes, for "rendering aid and assistance to each other," the assured member had the right in his lifetime and for his own "aid and assistance" to make such use or disposition of the benefit by hypothecation, by power of appointment or otherwise, as would best yield such result. In this view we cannot concur. The fund is no part of the estate of the deceased but belongs wholly to the lawful beneficiary. *Monizi* v. *Santo Antonio Society,* 21 Haw. 591, 594; *Voelker* v. *Grand Lodge B. of L. F.,* 77 S. W. 999, 1000. We think it is plain that an undertaking to pay a given sum of money after the death of the member is not intended as aid or assistance to the member. It was obviously intended under the provisions of the charter as aid and assistance to the family of the member who dies. *Rockhold* v. *Canton M. B. Society,* 129 Ill. 440, 456, 2 L. R. A. 420. In *National Mutual Aid Association* v. *Gonser,* 43 Ohio St. 1, the court, in discussing a contention there advanced by plaintiff's counsel, in all respects similar to that advanced by defendant in this case, said, (page 6):

"It is further maintained by Gonser that as this company was organized, among other objects, for the 'mutual protection and relief of its members,' the assured member had the right, in his life-time, and for his own 'protection and relief,' to make such use or disposition of the policy, either by hypothecation, by assignment, or by will, as would best yield such result. This argument involves the presupposition that Wilhelm Kebaugh, the assured member, is the party for whose benefit the policy was issued. It is in no sense an endowment policy. True, it is in terms made payable 'to Wilhelm Kebaugh, or any person designated,' etc., but it is expressly made payable 'within ninety days after due notice and proof of' his death. It is clear that this policy contemplated that its benefits were destined to accrue to the person designated by the will of the assured, or to his heirs, if no such designation were made. It follows that, to entitle himself to recover upon this policy, Gonser must bring himself within the operation of the second declared purpose of the statute, to wit: 'for the payment of stipulated sums of money to the families or heirs of the deceased members of such

company.' Gonser's petition fails to bring him within either designation."

The charter of the society intends a particular and special method of assistance to the designated class of persons after the member's death and the purpose would be defeated by allowing an assignment during the member's life to his creditors as collateral security. Durao was nothing more than a creditor of the deceased so far as the law of this case goes and the assignment to him was therefore invalid. 1 Bacon, Ben. Soc., §§244, 244a; *Wagner* v. *Ben. Soc.*, 70 Mo. App. 167; *Voelker* v. *Grand Lodge B. of L. F.*, supra. The by-law (Art. 10, Ch. 7, By-Laws of 1909) under which the deceased member attempted to dispose of the mortuary fund to Durao is contrary to the defendant's charter and therefore unauthorized and void. It was conceded by the defendant, and found as a fact by the trial judge, that the absence of the member's wife from the Territory was entirely without fault on her part. There is nothing in the charter provision limiting the payment of this mortuary fund to members of the family of the deceased who are resident in this Territory and we do not think such limitation could be properly imposed by the corporation in the form of a by-law. Where the charter expressly provides who shall be entitled to receive the mortuary fund the corporation cannot make a by-law extending or limiting the right thus regulated. 3 Clark and Marshall on Private Corporations, pp. 1945-46; *People's H. S. Bank* v. *Superior Court*, 104 Cal. 649. We are therefore of the opinion that any by-law permitting a member to deprive his widow of the mortuary fund under such circumstances would be an unreasonable and an unwarrantable limitation upon the charter provision and void. "The designation of a person not entitled to take under the laws of the society or its charter does not invalidate the contract but only the designation so that the benefit will go * * * as the laws of the society provide in case of the death of all the beneficiaries." 1 Bacon, Ben. Soc., §265, and cases cited.

The exceptions are sustained and the judgment is vacated. *Holmes, Stanley & Olson* for plaintiff. *E. C. Peters* for defendant.